UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY W. SPENCER,

    Petitioner,

v.                                                    Case No. 8:07-cv-1829-T-33MAP

SECRETARY DEPARTMENT OF CORRECTIONS,

    Respondent.
_____/

## **ORDER**

This cause is before the Court on Petitioner Timothy W. Spencer's 28 U.S.C. § 2254 petition for writ of habeas corpus. Spencer challenges his conviction and sentence entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida. A review of the record demonstrates that, for the following reasons, the petition must be **denied.**

## **PROCEDURAL HISTORY**

### **Charges**

On April 23, 1999, in Case No. 99-5874, the State Attorney filed an Information charging Spencer with one count of Possession of Cannabis. (Exhibit 1). On June 10, 1999, in Case No. 99-5464, the State Attorney charged Spencer with four counts of Sexual Battery (familial authority/victim under 18 and over 12 years of age); five counts of Lewd and Lascivious Acts on a Child; one count of Lewd and Lascivious Act in the Presence of a Child; and sixteen counts of Possession of Child Pornography. (Exhibit 2). Spencer was

also arrested in Case No. 99-5913 for 27 counts of Sexual Performance by a Child. There appears to be no Information filed as to these latter charges. However, as part of the negotiated plea agreement, a nolle prosequi of the 27 charges in Case No. 99-5913 was filed by the State on November 22, 1999. (Exhibit 3).

**Change of Plea and Sentencing**

Spencer appeared for a change of plea hearing on October 29, 1999, before the state trial judge. (Exhibit 4). Spencer was represented by Brian E. Gonzalez, Esquire. In Case No. 99-5464, pursuant to a negotiated plea agreement, Spencer pled guilty to four counts of Sexual Battery (counts one, two, three, and four), five counts of Lewd and Lascivious Act (counts five, six, seven, eight, and nine), and one count of Lewd and Lascivious Act in Presence of a Child (count ten). The court sentenced Spencer to nineteen years incarceration to be followed by eleven years probation on counts one, two, three, and four; to fifteen years incarceration on counts five, six, seven, eight, and nine; and to five years incarceration on count ten. All sentences run concurrently. (Exhibit 5).

In Case No. 99-5874, Spencer pled guilty to one count of Possession of Cannabis and was sentenced to county jail with credit for time served. (Exhibit 6). Spencer did not pursue a direct appeal.

**Rule 3.850 Motion for Postconviction Relief**

On October 13, 2000, Spencer filed a pro se Motion for Postconviction Relief, pursuant to Florida Rule of Criminal Procedure 3.850, raising six grounds for relief:

> 1. Ineffective assistance of counsel, because counsel rendered the plea involuntarily without an understanding of the nature of the charge and the consequences of entering a plea of guilty, where counsel informed the Defendant that there were no defenses to the crime charged.

- 2 -

> 2. Ineffective assistance of counsel for failing to have the Defendant psychologically tested to determine if the Defendant was competent at the time of the crimes and while entering a plea of guilty.
>
> 3. The State of Florida rendered this plea involuntarily, because specific performance has not been met.
>
> 4. Ineffective assistance of counsel for failing to challenge the illegal search and seizure that was gained from trickery and/or deceit.
>
> 5. Ineffective assistance of counsel for failing to challenge a possible double jeopardy violation where two of the charges contained the similar or identical elements of proof.
>
> 6. Ineffective assistance of counsel for failing to subject the State's case to any meaningful adversarial testing and coercing a plea of guilty against Spencer's will.

(Exhibit 7)

On September 17, 2001, the state trial court summarily denied grounds one, two, four, and six, and ordered the State to respond to grounds three and five. (Exhibit 8). On November 2, 2001, the State filed its response. (Exhibit 9). On November 22, 2002, the state trial court entered an order granting an evidentiary hearing on grounds three and five. (Exhibit 10). The hearing was held on June 5, 2003. (Exhibit 11). Spencer was represented by two attorneys. Following the hearing, on July 30, 2003, the court denied grounds three and five of the Rule 3.850 motion. (Exhibit 12).

Spencer appealed the adverse rulings. His appellate counsel filed an initial brief (Exhibit 13), and the State filed its answer brief. (Exhibit 14). On December 1, 2004, in Case No. 2D03-3969, the state district court of appeal affirmed the denial of relief on grounds two (in part), three, five, and six, and remanded the case for the state trial court to conduct further proceedings on grounds one, two (in part), and four. (Exhibit 15).

*Spencer v. State*, 898 So. 2d 868 (Fla. 2d DCA 2004). The court issued its mandate on January 28, 2005. (Exhibit 16).

**On Remand**

On remand, in accordance with the state district court of appeal's mandate, the state trial court granted an evidentiary hearing on the following grounds:

**Ground 1:** Counsel was ineffective for failing to inform Spencer that there were defenses to the charged offenses, specifically, an insanity defense.

**Ground 2:** Counsel was ineffective for failing to have Spencer psychologically evaluated to determine if he were competent at the time he committed the offenses.

**Ground 4:** Counsel was ineffective for failing to challenge the illegal search and seizure of evidence that was obtained by trickery and/or deceit.

The evidentiary hearing was held February 15, 2006. (Exhibit 17). Spencer was represented by counsel. After the hearing, on September 14, 2006, the state trial court denied the Rule 3.850 motion for postconviction relief. (Exhibit 18).

Spencer, who was represented by retained counsel, appealed the adverse ruling, raising two issues:

Issue I

THE TRIAL COURT ERRED IN DENYING POSTCONVICTION RELIEF ON APPELLANT'S GROUNDS 1 AND 2 CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO INFORM DEFENDANT OF AND INVESTIGATE AVAILABLE DEFENSES.

Issue II

APPELLANT WAS DENIED A FULL AND FAIR EVIDENTIARY HEARING IN VIOLATION OF DUE PROCESS WHERE THE TRIAL COURT PROHIBITED APPELLANT FROM PRESENTING AT THE EVIDENTIARY HEARING THE TESTIMONY OF JEANINE COHEN, ESQUIRE, AS A CRIMINAL DEFENSE EXPERT.

(Exhibit 19).

On September 5, 2007, in Case No. 2D06-4532, the state district court of appeal per curiam affirmed the state trial court's order denying Rule 3.850 relief. (Exhibit 22). *Spencer v. State*, 963 So. 2d 713 (Fla. 2d DCA  2007) [table]. The mandate issued September 26, 2007. (Exhibit 23).

Spencer timely signed the present 28 U.S.C. § 2254 petition on October 3, 2007. (Doc. No. 1).

## Standards of Review

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  The *Strickland* two-part test requires a Petitioner to demonstrate that counsel's

performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

The two-pronged *Strickland* test is applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Hill,* 474 U.S. at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill,* 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* The best way to evaluate whether there is a reasonable

probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial. *Upshaw v. United States*, 2008 WL 638261 at *1 (M.D. Fla., Mar. 5, 2008) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

## DISCUSSION

### Ground One

Spencer alleges trial counsel was ineffective by informing Spencer that there was no defense to the crimes with which Spencer was charged. Therefore, according to Spencer, the guilty plea was involuntary.

Specifically, Spencer faults counsel for failing to advise him that an insanity defense was available. The state trial court rejected this claim after conducting a full and fair evidentiary hearing. The state trial court set out the following findings of fact and conclusions of law in its September 14, 2006, final order denying postconviction relief:

> In ground one, Defendant claims counsel was ineffective for falsely advising him that there were no available defenses to the offenses charged. Defendant further claims he advised counsel of his mental health history, but counsel still failed to advise him of an insanity defense. Defendant further claims counsel's misadvice rendered his plea involuntary where he would not have pled guilty but for counsel's misadvice.
>
> At the February 15, 2006 evidentiary hearing, Defendant testified in conformance with his Motion. (See February 15, 2006 transcript, pp. 82-84, 90, attached). His trial counsel, Brian Gonzalez, Esquire, testified that he determined insanity was not a viable defense in the instant case, as follows:
>
>> [MR. CONNELL, POST-CONVICTION COUNSEL]: Let me put it this way. Your understanding of the law when you were representing my client [sic] were you aware that insanity could be a defense for him?

[MR. GONZALEZ]: Yes. Under the proper circumstances under the proper facts and what was given and aware to me. I also know quite frankly, and, again, what I do is when I suggest to my client is what I feel is in his best interest based on my experience and based on my knowledge and the facts of the evidence. To have a mental disease or a mental defect where under 3.216 a person does not know what he is doing or if he knows what he is doing he doesn't know it is wrong did not, in my estimation, fit what I knew about the case, what the evidence was and my conversations with Mr. Spencer. I do know it exists as a defense, a very unlikely and unsuccessful defense but it does exist.

[MR. CONNELL]: Did you tell Mr. Spencer that there was [sic] essentially no defenses [sic] available to him?

[MR. GONZALEZ]: I did not. What I told him was that there was a great deal of evidence. What I told him is that what I viewed in the form of video tapes and pictures and such were extremely, extremely harmful. What I told him was that my belief, and you will get in to this later, of what might be suppressible would not change in great detail his circumstances. And we can certainly proceed with discovery from head to toe and try his case, but I felt like the evidence was very damaging.

[MR. CONNELL]: Again, you never had any discussions with him regarding the insanity defense?

[MR. GONZALEZ]: I did not tell Mr. Spencer no [sic] I believed that insanity would be a proper defense or a viable defense in his case.

[MR. CONNELL]: Did you have any discussions with him in trying to educate him what [sic] insanity defense was?

[MR. GONZALEZ]: No, I did not. I did not feel it was necessary under the circumstances and the facts as I knew them.

[MR. CONNELL]: In your routine practice on cases do you have those discussions with clients where you essentially educate them on what the insanity defense is?

[MR. GONZALEZ]: I don't do it in every case. I review the facts. I review the evidence. I review the history and I make a determination whether or not I feel based on my knowledge of the

>law whether a particular defense makes sense in a particular case. Certainly insanity would probably be the least viable defense that I know of in law. I am not saying it is not successful on occasion, but if I were looking at a myriad of defenses that would certainly be the least reliable in my experience and the experiences I have seen in court rooms in this circuit.

(February 15, 2006, transcript, pp. 21-23, attached).

>[MR. CONNELL]: You would agree during the course of your representation with Mr. Spencer you never saw the need to educate him on the insanity defense?
>
>[MR. GONZALEZ]: I did not.

(February 15, 2006, transcript, pp. 23-24, attached).

>[MR. GONZALEZ]: Based on my conversation with Mr. Spencer and based on the multitude of documents that he sent me in preparation of his case and based on my discussions with Doctor Cotter I did not believe insanity would be a viable and successful defense in Mr. Spencer's case.

(February 15, 2006, transcript, pp. 35-36, attached).

>[MR. CONNELL]: Would you agree that perhaps the reason you never consulted with Mr. Spencer regarding the insanity defense is because you simply don't have any confidence in that defense yourself?
>
>[MR. GONZALEZ]: I think that would have been a secondary reason. The primary reason would be that I saw nothing historically and I saw nothing pending the evidence and the facts and what Mr. Spencer related to me that would indicate to me that insanity would be viable in this case.

(February 15, 2006, transcript, p. 37, attached).

>[MR. GONZALEZ]: Well, I think that when you talk about what is required in an insanity defense pursuant to the law and the jury functions and when you as a practitioner review the facts and the evidence in a particular case and you try to apply them to what your client is telling you and what your history is, you try to make a determination as to whether or not you think it is viable. In this

- 9 -

> particular case based on what I know based on what I saw based on what I read, based on what I observed I did not believe insanity was a viable defense.

(February 15, 2006, transcript, pp. 42-43, attached).

> [MR. GONZALEZ]: With regard to those issues just very simply I made the assessment I thought was best under the circumstances knowing everything I knew. I did not believe it was viable and certainly secondarily to have Mr. Spencer go to trial on that issue and with that defense knowing the history and the prior successes of this type of defense certainly gave me apprehension that it would be successful.

(February 15, 2006, transcript, p. 45, attached).

Additionally, Mr. Gonzalez testified that he assessed the viability of an insanity defense, in part, based upon letters written to him by Defendant, wherein he states that he knew his actions were wrong. (February 15, 2006, transcript, pp. 43-44, attached).

A review of Defendant's letters, titled "My Discovery," "The Environment," "Defense Summary," "My Desired Goals," "Arrest Affidavit," "Defense Affidavit," "Background Document of Tim Spencer," entered as State's Exhibit No. 1, contain Defendant's own statements that he knew his actions were wrong; such statements include:

> I knew it was wrong to become physically active with her , but I believe that I made it acceptable in my mind since she could fulfill my needs that I felt were owed to me in the situation the three of us were in.

(State's Exhibit No. 1, "My Discovery," attached).

> We later talked about the incident and I said that she would need to keep this a secret since I could get into trouble with her being only 13 years old.

(State's Exhibit No. 1, "Background Document of Tim Spencer," p. 3, attached).

> I knew that what we were doing was legally wrong, but since we both received physical enjoyment from it, I have never forced her

> to do anything she didn't want, and she made the extra money she wanted, I never thought that she would tell anyone.
>
> (State's Exhibit No. 1, "Background Document of Tim Spencer," p. 4, attached).
>
> Based upon the testimony and evidence presented at the February 15, 2006, evidentiary hearing, the Court finds the testimony presented by Mr. Gonzalez to be highly credible. *See Smith v. State*, 697 So. 2d 991, 992 (Fla. 4th DCA 1997) (stating that following an evidentiary hearing the finder of fact can rely upon testimony it finds to be credible). Accordingly, the Court finds trial counsel considered the insanity defense but ultimately determined that it was not a viable defense. After considering the Motion, court file and record, as well as the testimony and evidence presented at the February 15, 2006, evidentiary hearing, including Defendant's letters to counsel, the Court finds Mr. Gonzalez's ultimate rejection of the insanity defense was reasonable under the circumstances. "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). Consequently, the Court finds Defendant has failed to show that counsel performed deficiently pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). As such, no relief is warranted on ground one of Defendant's Motion.

(Exhibit 18 at pp. 2-6). As reflected in the state trial court's order, trial counsel's rejection of the insanity defense was reasonable. A trial counsel's strategic or tactical choices in a criminal case, after a thorough investigation of the law and facts, "are virtually unchallengeable." *Strickland*, 466 U.S. at 689-690. Moreover, the fact that a chosen strategy or defense was ultimately unsuccessful does not mean that counsel's performance was ineffective. *See Zamora v. Dugger*, 834 F.2d 956, 959 (11th Cir. 1987) (attorney's tactical decision to employ an insanity defense may not have been successful in retrospect, but *Strickland* allows trial counsel great latitude to conduct a defense). In this case, trial counsel's professional opinion that the insanity defense was not available to Spencer under the facts and circumstances of his case was objectively reasonable, and the state trial

court's denial of Spencer's allegation of ineffectiveness in Ground One is entitled to deference under 28 U.S.C. § 2254(d) and (e). Spencer has not rebutted the state trial court's findings with clear and convincing evidence.

Ground One does not warrant habeas corpus relief.

## Ground Two

In the first part of Ground Two, Spencer contends his attorney was ineffective for failing to have Spencer psychologically tested to determine if Spencer was competent at the times the crimes were committed. This claim was also addressed at an evidentiary hearing and was reasonably rejected by the state trial court for the following reasons:

> In ground two, Defendant claims counsel was ineffective for failing to have him psychologically evaluated to determine if he was competent at the time the offenses occurred.
>
> At the February 15, 2006 evidentiary hearing, Defendant presented the testimony of Dr. Walter Afield, M.D., a psychiatrist. Dr. Afield testified that he evaluated Defendant on October 31, 2005. (See February 15, 2006, transcript, pp. 55, 60, attached). Based on that evaluation as well as his review of medical and police records, Dr. Afield further testified that Defendant had a mental illness, did not know the wrongfulness of actions, and was legally insane at the time of the offenses. (See February 15, 2006, transcript, pp. 57-59, attached).
>
> Mr. Gonzalez essentially testified that a psychiatric examination for competency at the time of the offenses was not necessary because he was not aware of any significant psychiatric history and, based upon his conversations with and letters from Defendant, it was clear to him that Defendant was competent at the time of the offenses, as follows:
>
>> [MR. CONNELL]: Well, at the time of your representation were you aware that Mr. Spencer had a chronic history of depression dating back to his late teens of suicidal ideations and attempts as well as being treated for those conditions?

> [MR. GONZALEZ]: I don't ever remember any documentation or any length or breath [sic] of conversation where Mr. Spencer advised me of a significant psychiatric history.
>
> [MR. CONNELL]: All right. Again, your questioning of your client did you question him in that regard[] as to his psychiatric history?
>
> [MR. GONZALEZ]: Yes. Because as I stated in the notes that he has given me, and, of course, I prefaced and I used his notes he gave me in attempting to get to his history I asked him about prior psychological history. He did not indicate to me any serious past psychiatric or psychological history and none is documented in the letters that he sent me.

(February 15, 2006 transcript, pp. 10-11, attached).

> [MR. CONNELL]: Is it your testimony today that you did have discussions with Mr. Spencer in regard to his understanding of the wrongfulness of his actions with that girl?
>
> [MR. GONZALEZ]: I can't tell you and I wouldn't under oath say I asked Mr. Spencer did you know that what you did with that girl was wrong. That would not have been the nature of my questions. *I can tell you we had extensive conversations about the evidence and about the facts and about incidents that took place and it appeared to me as a layman and as a practitioner that he was fully aware of his actions and why he did them and what we were going to do to attempt to potentially obviate them or mitigate them. That would have been on numerous occasions.*

(February 15, 2006 transcript, p. 18, attached) (emphasis added in state trial court order denying relief).

> [MR. CONNELL]: Would you agree during the course of your representation Mr. Spencer was in a denial state of ever having done anything wrong with the victim?
>
> [MR. GONZALEZ]: No. I don't know that he denied that he did anything wrong. I think he in fact recognized the wrongfulness of actions. He had pages upon pages of text as to what his defenses to those actions might be.
>
> [MR. CONNELL]: When you say at times you would say he was in denial over the wrongfulness of his conduct?

- 13 -

> [MR. GONZALEZ]: He was in denial over the legal nature of whether his conduct was illegal or that it wasn't his fault that those things took place that he was provoked by a person who was well endowed and physically mature and he was starved sexually within the relationship with her mother and that she desired money and he determined that by giving her money she would perform these acts. There were [sic] a multitude of different explanations that he gave for his actions. None of which were legal defenses.

(February 15, 2006 transcript, pp. 19-20, attached).

> [MR. CONNELL]: You had the capability back at the time of your representation to refer Mr. Spencer for an insanity and competency evaluation of a confidential nature?
>
> [MR. GONZALEZ]: Yes.
>
> [MR. CONNELL]: Where the State would not be aware of it?
>
> [MR. GONZALEZ]: Absolutely. I have to do that in good faith based on what I see and what I appreciate in the interaction with my client and whatever history he gives me. It was apparent to me without hesitation that Mr. Spencer appreciated the charges against him. Mr. Spencer appreciated the penalties. He talked about the adversarial process. He disclosed to me pertinent facts in preparation of his defense. He always manifested appropriate behavior and I didn't expect him to not be able to do that in the courtroom. I did not see any of the signs when I normally would refer somebody for a competency evaluation.

(February 15, 2006 transcript, pp. 36-37, attached).

Based upon the testimony and evidence presented at the February 15, 2006 evidentiary hearing, the Court finds the testimony presented by Mr. Gonzalez to be highly credible. *See Smith*, 697 So. 2d at 992. Mr. Gonzalez determined it was not necessary to have Defendant psychologically evaluated for his competency at the time of the offenses where he was not aware of any significant psychiatric history and, based upon the evidence in this case and his conversations with and letters from Defendant, he determined that insanity was not a viable defense. After considering the Motion, court file and record, as well the testimony and evidence presented at the February 15, 2006 evidentiary hearing, including Defendant's letters to Mr. Gonzalez, the Court finds that under the circumstances, counsel's determination was reasonable.

> Consequently, Defendant has failed to show that counsel performed deficiently under *Strickland*. As such, no relief is warranted on ground two of Defendant's Motion.

(Exhibit 18 at pp. 6-9).

The state trial court's decision denying relief was objectively reasonable under the facts of this case. The testimony of Spencer's trial attorney at the postconviction hearing, as well the exhibits submitted to the court during the hearing, support a finding that Spencer was legally sane at the time he committed the offenses,[1] and that an insanity defense was not viable. Accordingly, Spencer has not demonstrated ineffective assistance of counsel under the *Strickland* performance prong, and the first allegation in Ground Two does not warrant habeas corpus relief.

In the second part of Ground Two, Spencer alleges his attorney was ineffective for failing to have him psychologically tested to determine whether Spencer was competent at the time of Spencer entered his plea and at the time of sentencing. This claim was summarily denied by the state trial court in its September 17, 2001, order denying postconviction relief.

The court properly concluded Spencer's allegation was refuted by the record, stating:

> As to Defendant's allegations regarding psychological testing to determine competency at the time of the plea and sentencing, the Defendant's allegations are without merit. Upon review of the October 25, 1999 transcript, the Court asked Defendant, during the plea colloquy, the following:

---

[1] It is well established in Florida that the test for insanity, when used as a defense to a criminal charge, is the *McNaughton* Rule. Under *McNaughton*, the only issues are 1) the individual's ability at the time of the incident to distinguish right from wrong; and 2) his ability to understand the "wrongness" of the act committed. *Gurganus v. State*, 451 So. 2d 817, 820 (Fla. 1984).

- 15 -

| | |
|---|---|
| THE COURT: | Mr. Spencer, do you fully understand the nature of the charges to which you just pled guilty? |
| DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Do you understand that the maximum possible penalty for the four sexual batteries is 30 years in the state prison and maximum possible penalty for the lewd and lascivious act on a child is 15 years in the State Prison? |
| DEFENDANT: | Yes. |
| THE COURT: | The maximum possible penalty for the other lewd and lascivious act is 5 and the maximum possible penalty for the possession of marijuana is 5 years in the State Prison. |
| DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Do you understand you have the right to plead not guilty and have a trial by a jury and have a jury decide what, if anything, you did? |
| DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Do you understand that at such a trial, you would have the right to call your witnesses, if any, as well as confront any witnesses the State might call against you and Mr. Gonzalez would be your attorney? |
| DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Do you understand the plea negotiations in your case as are stated on this plea form which you signed here this morning? |

> DEFENDANT:      Yes, Your Honor.
>
> THE COURT:      Other than those negotiations, has anyone made you any promises or threats to get you to plead guilty this morning?
>
> DEFENDANT:      No, Your Honor.
>
> THE COURT:      Are you pleading guilty of your own free will?
>
> DEFENDANT:      Yes.
>
> THE COURT:      And are you pleading guilty because you feel those pleas to be in your own best interest and for no other reason?
>
> DEFENDANT:      Yes, Your Honor.
>
> (See October 25, 1999 Transcript, pages 3-5, attached). The Court specifically questioned Defendant as to whether the plea he signed was done so under his own free will and accord, and with Defendant's full knowledge and understanding of the charges against him. Therefore, Defendant has failed to meet the first prong of the *Strickland* [sic] in that he failed to prove counsel failed to prepare, investigate, and seek a psychological evaluation, thereby rendering Defendant's plea involuntary due to a lack of full understanding of the nature of the charges and the consequences thereof. Since Defendant has failed to meet the first prong of *Strickland*, it is unnecessary to address the prejudice component. As such, no relief is warranted as to this allegation of ground 2.

(Exhibit 8 at pp. 5-6).

A criminal defendant must be mentally competent to stand trial or enter a plea. *Drope v. Missouri*, 420 U.S. 162 (1975). The question of whether a defendant is competent focuses on "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as

- 17 -

factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

A review of the record in this case, including the plea colloquy transcript and trial counsel's testimony at the evidentiary hearing, demonstrates Spencer had sufficient present ability to consult with his attorney and had a rational and factual understanding of the proceedings against him. Moreover, in his federal habeas corpus petition, Spencer does not specifically point to any portion of the plea bargain, plea colloquy, or sentencing, that he did not understand or to which he involuntarily and unknowingly agreed. Thus, the state trial court's conclusion that counsel was not ineffective for failing to seek psychological testing prior to the change of plea is objectively reasonable and is entitled to deference under the AEDPA. Spencer has not rebutted this deference with clear and convincing evidence.

Ground Two does not warrant habeas corpus relief.

## Ground Three

Spencer contends that trial counsel was ineffective for failing to challenge a possible double jeopardy violation where two of the charges contained the same or similar elements of proof. This claim has no merit because Spencer waived this claim when he entered his voluntary, negotiated guilty plea. *See Dermota v. United States*, 895 F.2d 1324, (11th Cir. 1990) ("[Defendant] waived his right to raise a double jeopardy objection by pleading guilty to two separate offenses as a result of a plea agreement he entered into freely, voluntarily and accompanied by his attorney."). *See also, United States v. Broce*, 488 U.S. 563, 570 (1989) ("Just as a defendant who pleads guilty to a single count admits guilt to the specified

offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes.").

Even if the double jeopardy argument were not waived, Spencer is not entitled to federal habeas corpus relief on this claim. After an evidentiary hearing, the state trial court found this claim to be without merit, stating in its July 30, 2003, order:

> At the evidentiary hearing, Mr. Brian Gonzalez, defense counsel, testified that he never discussed the double jeopardy issue with Defendant because based upon the post-Miranda statements that he had read, the tapes and still pictures that he had reviewed, indicated that there were certainly more than the alleged eight events that would have been separate and distinct constituting the counts that would have been charged. (See Evidentiary Hearing Transcript, dated June 5, 2003, p. 8, L: 22-25, p. 9, L: 1-3, p. 11, L: 4-11, attached). Mr. Gonzalez testified that based on all the evidence that he was able to review, there did not appear to be any concern over a double jeopardy issue because the evidence was sufficient to present a prime [sic] facie case on the counts charged. (See Evidentiary Hearing Transcript, dated June 6, p. 14, L: 17-25, p. 15, L: 1, attached).
>
> Based on the foregoing, the Court finds that Defendant fails to meet either prong of the *Strickland* test in that based upon all the evidence reviewed by counsel there was an independent factual basis for each count Defendant pled to. As such, no relief is warranted on this ground.

(Exhibit 12 at pp. 2-3). The state trial court's ruling was appropriate under state law. If two convictions, based on two distinct criminal acts occur, then Defendant cannot claim a double jeopardy violation. *See State v. Paul*, 934 So. 2d 1167, 1173 n. 3 (Fla. 2006)("[T]he prohibition against double jeopardy does not prohibit multiple convictions and punishments where a defendant commits two or more distinct criminal acts.") (quoting *Hayes v. State*, 803 So. 2d 695, 700 (Fla. 2001)).

Ground Three does not warrant habeas corpus relief.

**Accordingly, the Court orders:**

That Spencer's petition for writ of habeas corpus is denied. The Clerk is directed to enter judgment against Spencer and to close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on October 9, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Timothy W. Spencer